{¶ 1} Appellant, Rodney Brown, ("Brown"), appeals the judgment entered by the Ashtabula County Court of Common Pleas, Juvenile Division, in which the trial court granted appellee's motion for permanent custody.
 {¶ 2} The following facts were presented at the permanent custody hearing. Giovanna Davis resided with her mother, Jean Davis, in Lake County, Ohio. Both parties assert that Brown is Giovanna's natural father. However, although Brown was advised by the caseworker to submit to paternity testing, he failed to appear for testing. The father of Arianna is not known. In July 1999, the Lake County Department of Children Services ("LCDCS") removed Giovanna from the home as Jean Davis repeatedly left her with caregivers for extended periods of time beyond the time she was expected to return. Jean Davis was also experiencing problems with drug and alcohol abuse during that time. Giovanna was subsequently returned to the home. Arianna Davis was born in 2000. The children were both removed from the home in January 2001, and a new case file was filed with LCDCS. The children were subsequently returned to the mother's home in July 2002, with LCDCS having been granted protective supervision.
 {¶ 3} The family relocated to Ashtabula County in September 2002. The case was transferred to Ashtabula County Children Services Board ("ACCSB"), which would retain protective supervision. The children were again removed from the home in April 2003, due to the continuing concerns of drug and alcohol abuse and the children being left with caregivers for extended time periods. On April 11, 2003, an ex parte emergency order was granted, placing the children in the temporary custody of ACCSB.
 {¶ 4} On April 14, 2003, ACCSB filed a complaint, pursuant to R.C.2151.03(A)(2) and 2151.04(C), alleging the children were neglected and dependent, and seeking temporary custody of the children to ACCSB or legal custody with a legal relative.
 {¶ 5} An emergency shelter care hearing was held on April 14, 2003, wherein the court found probable cause for the removal of the children into the temporary custody of ACCSB. Attorney Michael Hiener was appointed the guardian ad litem at that time. Jean Davis was ordered to submit to inpatient drug treatment.
 {¶ 6} ACCSB filed a case plan with the court on May 6, 2003. On May 14, 2003, an adjudicatory hearing was held. The children were found to be dependent and neglected. Jean Davis was not present at that hearing, although she was notified through certified mail. A dispositional hearing was held on July 7, 2003. At that time, the case plan filed by ACCSB was adopted, and the children were to remain in the temporary custody of ACCSB.
 {¶ 7} A review of the case plan was held on October 14, 2003. At that time, Jean Davis had not completed any aspect of the case plan. The trial court ordered ACCSB to file for permanent custody within thirty days. Thus, on November 6, 2003, ACCSB filed a motion for permanent custody of the children. On November 26, 2003, an attorney was appointed to represent Brown in the case. Brown was incarcerated at that time, and not scheduled for release until 2007. Brown subsequently filed a motion seeking to be transported to the permanent custody hearing set for March 15, 2004. The trial court granted Brown's motion.
 {¶ 8} On February 12, 2004, ACCSB filed an amended motion requesting permanent custody of the children. Attorney Hiener filed his guardian ad litem report, recommending the children be placed in the permanent custody of ACCSB.
 {¶ 9} The hearing on the permanent custody motion went forward on March 15, 2004. At the hearing, Jean Davis voluntarily placed the children in the permanent custody of ACCSB for purposes of adoption. Due to a scheduling problem, Brown was unable to be transported at that time so the hearing was ultimately held on March 25, 2004, before a magistrate with Brown present.
 {¶ 10} On August 5, 2004, the magistrate issued a decision, granting ACCSB's motion for permanent custody. Brown filed objections to the magistrate's decision. On August 20, 2004, the trial court issued a judgment entry, adopting the magistrate's decision. Brown filed this appeal, presenting three assignments of error:
 {¶ 11} "[1.] The juvenile court erred in allowing impermissible hearsay into the permanent custody hearing in the form of the ACCSB caseworker's testimony regarding mother of subject children's references to the `abusive relationship' between appellant and herself.
 {¶ 12} "[2.] The juvenile court erred in determining that termination of parental rights was in the subject children's best interests.
 {¶ 13} "[3.] The trial court erred in failing to make an independent analysis of appellant's objections to the magistrate's decision."
 {¶ 14} We note initially that Brown directs each of his assignments of error toward both Giovanna and Arianna. However, as noted above, Brown has not established paternity with either child.
 {¶ 15} In his first assignment of error, Brown contends the trial court erred in allowing the ACCSB caseworker, Jerald Bailey, to testify regarding a conversation Bailey had with Jean Davis regarding her abusive relationship with Brown. Specifically, on direct examination, Bailey was asked what Jean Davis had told him about her history with Brown, to which Bailey responded, "she indicated that she had a very long abusive relationship with [Brown], and that he had a long history of illegal activity and was incarcerated."
 {¶ 16} The admission of relevant evidence is within the sound discretion of the trial court.[1] A reviewing court will not reverse the trial court's admission of evidence absent an abuse of discretion.[2]
 {¶ 17} Defense counsel objected to the statement at the hearing, and Brown contends the statement constitutes prejudicial hearsay. Brown cites this court's holding in In re Hope Walker in support of his contention.[3] In Walker, this court held the trial court erred in admitting the testimony and written report of a psychologist, as the written report was comprised from a review of collateral sources, including: telephone calls the psychologist made to the guardian ad litem; a review of another psychological report; and police records.[4]
Allegations of molestation were presented by the psychologist via a review of these collateral sources.[5] This court concluded that, as very little of the report and testimony contained the psychologist's own conclusions, and there were no proper foundations set forth for portions of the reports to which a hearsay exception applied, the psychologist's testimony and report were prejudicial hearsay warranting a remand to the trial court.[6]
 {¶ 18} This court's holding in Walker is distinguishable from the facts in the instant case. In the case sub judice, the statement made by Bailey is hearsay, in that it was offered to prove the truth of the matter asserted, to-wit: that permanent custody should not be awarded to Brown as he has a history of abusive and illegal activity.[7] However, we find the admission of the statement to be harmless error. As noted in the following, the trial court found, by clear and convincing evidence, that it was in the best interest of the children to grant permanent custody to ACCSB. Moreover, the statement was one made by Brown's ex-paramour, who had already voluntarily placed the children in the permanent custody of ACCSB for purposes of adoption, not a psychologist or as a result of a medical evaluation, as was the case in Walker. For these reasons, we conclude the admission of Bailey's statement constitutes harmless error.
 {¶ 19} Brown's first assignment of error is without merit.
 {¶ 20} In his second assignment of error, Brown contends the trial court erred in determining that the termination of his parental rights was in the children's best interest. Specifically, he contends ACCSB did not make adequate attempts at finding paternal relatives to care for the children and that his sister, Lawanda Brown, appeared at the hearing and testified as to her stable housing and an ability to take care of the children.
 {¶ 21} The trial court may grant permanent custody of a child to an agency, after a hearing, if the court determines, by clear and convincing evidence, that it is in the best interest of the children and that any of the circumstances enumerated in R.C. 2151.414(B)(1) apply. Those factors include:
 {¶ 22} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 23} "(b) The child is abandoned.
 {¶ 24} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 25} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 26} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 27} The trial court noted that the children have had extensive involvement with children services in both Lake and Ashtabula Counties. While residing in Lake County, the children were removed from the home in January 2001 and were not returned until July 2002. After relocating to Ashtabula County, the children were removed from the home in April 2003 and had not been returned at the time of the hearing on March 25, 2004. Thus, the trial court properly followed the statutory requirement and found by clear and convincing evidence that the children had been in the temporary custody of a public children service agency for twelve or more months of a consecutive twenty-two month period in accordance with R.C.2151.414(B)(1)(d).
 {¶ 28} After making the statutory finding, the trial court determined whether permanent custody to ACCSB was in the best interest of the children by considering all relevant factors, including, but not limited to, the five factors listed in R.C. 2151.414(D):
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers, and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period[.]
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} The trial court went through each of the five factors in R.C.2151.414(D) and found, with respect to the first factor, that the children have bonded with their maternal aunt and uncle, and have been in their home since they were last removed from their mother. The court noted that the paternal relatives, as relating to Giovanna, have shown no interest and have never contacted ACCSB regarding Giovanna. The court also made a finding that Lawanda Brown, a paternal aunt and witness brought forth by Brown at the permanency hearing, is not an appropriate care-giver for Giovanna and she does not have adequate income.
 {¶ 35} In considering the second factor, the court found the children were too young to express their wishes and noted the guardian ad litem's recommendation that permanent custody with ACCSB was in the best interest of the children.
 {¶ 36} The court also noted, in accordance with the third factor, the children have been in the temporary custody of one or more public children services agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 37} Regarding the fourth factor, regarding the need for legally secure placement, the court found the mother had voluntarily relinquished permanent custody; the father of Arianna is unknown; and Brown, Giovanna's father, is incarcerated until 2007 and unavailable to care for his child.
 {¶ 38} The court next went on to address the factors in division R.C.2151.414(E)(7) to (11) and found, inter alia, that the parties stipulated that Brown was incarcerated at the time of the filing for permanent custody and will not be available within eighteen months of the filing; the unknown father of Arianna, and Brown, have demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so; Brown's repeated incarceration precludes him from providing care for his child.
 {¶ 39} Brown's contentions regarding the failure of ACCSB to find suitable paternal relatives and the possibility of Lawanda Brown providing legally secure placement of the children are not supported by the record. The court made a finding that the children have had no contact with any paternal relatives and Lawanda Brown did not have the ability to provide care for the children.
 {¶ 40} Thus, in light of all of the foregoing evidence, we conclude the trial court properly adhered to the statutory requirements in determining that awarding permanent custody of the children to ACCSB was in the children's best interest.
 {¶ 41} Brown's second assignment of error is without merit.
 {¶ 42} In his third assignment of error, Brown contends the trial court erred in failing "to make an independent analysis" of Brown's objections to the magistrate's decision.
 {¶ 43} The magistrate's decision was filed on August 5, 2004. Brown filed objections to the magistrate's decision on August 19, 2004, requesting a transcript and hearing. The trial court adopted the magistrate's findings on August 20, 2004. In its judgment entry the court noted, "the Court finds no error of law or other defect on the face of the Magistrate's Decision filed August 5, 2004 and hereby adopts the Decision as the judgment of this Court."
 {¶ 44} Brown contends the trial court erred in not making an "independent analysis" of his objections, and by issuing a judgment entry overruling his objections on October 12, 2004, after it had already adopted the magistrate's decision.
 {¶ 45} Juv.R. 40 governs proceedings relating to a magistrate. Juv.R. 40(E)(3) relates to objections to a magistrate's decision. Specifically, Juv.R.40(E)(3)(c) states, in pertinent part:
 {¶ 46} "Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available."
 {¶ 47} A review of Brown's objections filed with the trial court reveals that he raised a number of objections to the magistrate's factual findings. Brown also requested a transcript and a hearing. Pursuant to Juv.R. 40(E)(3)(c), Brown's objections to the magistrate's factual findings needed to be accompanied by a transcript of the magistrate hearing or, if a transcript is not available, an affidavit reflecting the relevant evidence from the hearing.[8] Brown provided neither of these with his objections. We conclude the trial court properly adopted the magistrate's findings in its August 20, 2004 judgment entry and Brown's objections did not satisfy the requirements of Juv.R. 40. Moreover, Brown has raised the identical issues that were overruled by the trial court in this direct appeal. Thus, we conclude the trial court did not err in overruling Brown's objections to the magistrate's decision.
 {¶ 48} Brown's third assignment of error is without merit.
 {¶ 49} Based on the foregoing, Brown's assignments of error are without merit. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
Rice, J., concurs, Grendell, J., concurs in judgment only.
[1] State v. Kinley (1995), 72 Ohio St.3d 491, 497.
[2] Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299.
[3] In re Hope Walker, 11th Dist. No. 2002-A-0089, 2003-Ohio-799.
[4] Id. at ¶ 17-25.
[5] Id. at ¶ 33.
[6] Id. at ¶ 38.
[7] See Evid.R. 801(C).
[8] See Wilms v. Herbert, 9th Dist. No. 04CA008525, 2005-Ohio-2, at ¶9.