OPINION
{¶ 1} Plaintiff-appellant, Mark W. Havanec, appeals from a decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations, that, in part, ordered him to pay spousal support to defendant-appellee, Laura J. Havanec. Because the trial court did not err in awarding spousal support, we affirm.
 {¶ 2} On March 14, 2006, Mark filed a complaint for divorce. He and his wife Laura had been married since 1982 and have one adult child. The case proceeded to trial. Spousal support and, more specifically, Laura's ability to work, became the main contested issue. Laura, who was 52 at the time of trial, suffers from rheumatoid arthritis *Page 2 
and fibromyalgia and has not worked since 1997. She receives monthly disability payments from Social Security as well as from her former employer. Mark claimed that Laura could work and, therefore, was underemployed. Laura claimed that her medical conditions made her unemployable. Each side presented evidence from medical and/or vocational experts regarding Laura's medical conditions and her ability to work.
 {¶ 3} In its decree of divorce, the trial court, after dividing the parties' property, determined that an indefinite award of spousal support to Laura was reasonable and appropriate and ordered Mark to pay spousal support in the amount of $1,000 per month. The trial court declined to impute any income or earning capacity to Laura.
 {¶ 4} Mark appeals from the decree of divorce and assigns the following errors:
 1. The trial court erred to the prejudice of Mr. Havanec by failing in its RC 3105.18 analysis to impute income to Mrs. Havanec and awarding her $1,000.00 per month in indefinite spousal support.
 2. The trial court erred to the prejudice of Mr. Havanec by admitting into evidence, failing to strike, and relying upon the testimony of Lynne Kaufman on the capacity of Mrs. Havanec to do work, and her employability, in awarding spousal support to Mrs. Havanec.
 3. The trial court erred to the prejudice of Mr. Havanec by admitting into evidence the "Employability Earning Capacity Assessment" of Lynne Kaufman.
 {¶ 5} Mark's assignments of error all concern the trial court's award of spousal support. Any grant of spousal support is dependent upon the trial court's determination that support is reasonable and appropriate. In making this determination, the trial court must consider all the relevant factors set forth in R.C. 3105.18(C)(1), and may not consider any one factor in isolation. See Gerlach v. Gerlach, Franklin App. No. 03AP-22, *Page 3 2004-Ohio-1607, at ¶ 29, citing Kaechele v. Kaechele (1988),35 Ohio St.3d 93. Those factors are:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c)The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 6} The trial court is not required to comment on each statutory factor; rather, the record need only show the court considered the factors in making its award. McClung v. McClung, Franklin App. No. 03AP-156, 2004-Ohio-240, at ¶ 21. In its decree of divorce, the trial court considered each of the applicable factors and determined that an award of spousal support was reasonable and appropriate. *Page 4 
 {¶ 7} The focus of Mark's argument on appeal is factor (b), the relative earning abilities of the parties. Mark claims that the trial court should have imputed income to Laura for purposes of determining spousal support because she was capable of performing some light work.
 {¶ 8} Ohio courts have determined that earning ability involves "`both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment.'" Carroll v. Carroll, Delaware App. No. 2004-CAF-05035,2004-Ohio-6710, at ¶ 22, quoting Haniger v. Haniger (1982),8 Ohio App.3d 286, 288. When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a "person could earn if he made the effort." Beekman v. Beekman (Aug. 15, 1991), Franklin App. No. 90AP-780.
 {¶ 9} Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential. See, e.g., Beitzel v. Beitzel, Tuscarawas App. No. 06AP040023, 2006-Ohio-4234, at ¶ 28; Frost v. Frost (1992),84 Ohio App.3d 699; Beekman; Rothman v. Burns, Cuyahoga App. No. 88756,2007-Ohio-3914, at ¶ 31.
 {¶ 10} To support his claim for imputed income, Mark presented two reports from Dr. James Powers, a physician who examined Laura. Powers opined that Laura could perform sedentary or light work. However, Powers noted that Laura's medical conditions limited her manipulative skills and her ability to stand for long periods of time. Mark also *Page 5 
presented testimony and a report from a vocational expert, Steven Rosenthal, who similarly concluded that Laura could perform limited sedentary work. Rosenthal also noted Laura's physical limitations. In response, Laura presented testimony from her own vocational expert, Lynne Kaufman, who opined that Laura could not work due to her health issues and physical limitations.
 {¶ 11} Mark's second and third assignments of error contest the admissibility of Kaufman's expert testimony and report. The admissibility of expert testimony is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 616.
 {¶ 12} Mark first claims that Kaufman's expert testimony was not admissible because she relied on evidence not admitted at trial to form her opinion in violation of Evid. R. 703. We disagree.
 {¶ 13} The basis of opinion testimony by experts is provided for in Evid. R. 703. That rule provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." The Supreme Court of Ohio interpreted this rule in State v.Solomon (1991), 59 Ohio St.3d 124. In Solomon, the trial court excluded expert testimony because the experts based their opinions, in part, on reports not admitted as evidence in apparent violation of Evid. R. 703. The Supreme Court of Ohio disagreed and ruled that the expert testimony should have been admitted because the experts had personally examined the defendant and based their opinions in major part on those examinations. The court concluded that the requirements of Evid. R. 703 are satisfied if an expert bases an opinion, in whole or in part, on facts or data perceived by the expert. *Page 6 
Id. at 126. The Court distinguished two earlier cases where expert opinions were excluded because there was no indication in those cases that the expert had ever personally examined the defendant or that the issue had been raised. Id. (distinguishing State v. Chapin [1981], 67 Ohio St.2d 437 and State v. Jones [1984], 9 Ohio St.3d 123). See, also,State v. Hoover-Moore, Franklin App. No. 03AP-1186, 2004-Ohio-5541, at ¶ 35 (noting the "more relaxed interpretation" of the rule).
 {¶ 14} In the present case, Kaufman testified that she relied on multiple sources to arrive at her opinion that Laura was incapable of working. She relied on reports from Dr. Powers and Dr. Kevin Hackshaw. Dr. Hackshaw was Laura's treating physician. Although Dr. Hackshaw's reports were not admitted into evidence at trial, Dr. Powers' reports were admitted. We also note that Kaufman personally interviewed and observed Laura as part of her vocational assessment.
 {¶ 15} Simply because Kaufman relied in part on Dr. Hackshaw's reports, which were not admitted at trial, does not necessarily mean her testimony is inadmissible. Id. at ¶ 40 (affirming admission of expert testimony, even though opinions based in part on evidence not admitted at trial). The question is whether Kaufman based her opinion, in whole or in substantial part, on facts or data that she perceived or evidence that was properly admitted at trial. Farkas v. Detar (1998),126 Ohio App.3d 795, 798; Community Mut. Blue Cross Blue Shield v. McGlone
(Apr. 7, 1995), Scioto App. No. 93 CA 2156 ("[W]e must determine whether [the witnesses'] opinions were based, in whole or in major part, on facts or data perceived by them or admitted into evidence.");Reinhardt v. Univ. of Cincinnati Med. Ctr (Dec. 13, 1994), Franklin App. No. 94API04-603 (affirming admission of expert's testimony where opinions based upon admitted evidence and personal *Page 7 
examination). It is Mark's burden to demonstrate that Kaufman principally relied on facts not perceived by her and not admitted into evidence. Farkas at 800.
 {¶ 16} Mark has not demonstrated that Kaufman principally relied on Dr. Hackshaw's reports as the basis for her opinion. When Mark's counsel questioned Kaufman about the principal basis for her opinion, she indicated that Dr. Hackshaw's report was just one of the reports she relied on in arriving at her final opinion. She testified that she also considered Dr. Powers' reports. Kaufman stated that even if she accepted Dr. Powers' opinion that Laura could perform light, sedentary work, she was still of the opinion that Laura's vocational factors and physical limitations essentially rendered her unemployable even for those types of jobs. Therefore, it appears that Kaufman principally relied on her own interview/observations of Laura and only secondarily on the reports of Dr. Hackshaw and Dr. Powers. As previously noted, Dr. Powers' reports were admitted into evidence. Given the significant weight Kaufman placed on her personal interview/observations of Laura, the trial court did not abuse its discretion by admitting Kaufman's expert opinion.
 {¶ 17} Second, Mark claims that Kaufman's testimony violated Evid. R. 802 because it included hearsay. Specifically, Mark points to Kaufman's testimony about the substance of Dr. Hackshaw's opinion. However, the substance of Dr. Hackshaw's opinion was disclosed by two other witnesses.
 {¶ 18} Rosenthal, Mark's own vocational expert, testified that Hackshaw's functional capacity reports for Laura ranged from incapacitation up to working about two-thirds time. Laura testified that her doctor (Dr. Hackshaw) told her she should not be working at all. Rosenthal's report also contained two references to Laura's physical *Page 8 
limitations found by Dr. Hackshaw. Therefore, any error in admitting the hearsay opinions of Dr. Hackshaw was harmless because this evidence was already admitted through other witnesses. See State v. Harrison, Franklin App. No. 06AP-827, 2007-Ohio-2872, at ¶ 19 (admission of hearsay statement cumulative to other testimony constitutes harmless error).
 {¶ 19} Additionally, the trial court did not mention Dr. Hackshaw's opinion as a basis for its decision not to impute income to Laura, which further suggests that any error was harmless. See In re Mckenzie (Oct. 24, 1994), Stark App. No. CA-94-0011 (erroneous admission of hearsay harmless error where trial court did not consider evidence in its decision); In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968, at ¶ 79.
 {¶ 20} Mark's reliance on In re Walker, Ashtabula App. No. 2002-A-0089, 2003-Ohio-799, in support of his argument is misplaced. In that case, expert testimony and the expert's report were "so heavily tainted with hearsay statements" that the appellant was denied a fair trial. Id. at ¶ 36. Further, the admission of the hearsay statements inWalker was not harmless error because the trial court expressly relied on the hearsay statements in arriving at its decision. Id. at ¶ 27-37. Here, Mark challenges two hearsay statements, the substance of which were introduced into evidence through the testimony of other witnesses. Additionally, the trial court did not obviously rely on Hackshaw's statements in deciding not to impute income to Laura. Therefore,Walker is distinguishable from the facts of this case. See, also, In reGoff, Ashtabula App. No. 2004-A-0051, 2004-Ohio-7235, at ¶ 39
(distinguishing Walker); In re Davis, Ashtabula App. No. 2004-A-0068,2005-Ohio-411, at ¶ 18 (distinguishing Walker because admission of statement was harmless error). *Page 9 
 {¶ 21} Because the trial court did not abuse its discretion in admitting and considering Kaufman's expert testimony and report, we overrule Mark's second and third assignments of errors.
 {¶ 22} Mark contends in his first assignment of error that the trial court's award of spousal support was an abuse of its discretion. Specifically, Mark contends the trial court improperly declined to impute income to Laura because it speculated that she would lose disability benefits from her former employer if she regained employment. We disagree.
 {¶ 23} A trial court has broad discretion in determining whether to award spousal support. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24;Vanderpool v. Vanderpool (1997), 118 Ohio App.3d 876, 879. The amount of a support award also remains within the discretion of the trial court.Moore v. Moore (1992), 83 Ohio App.3d 75, 78. An appellate court should not alter a support award absent a finding that the trial court abused its discretion, which means that the trial court's determination was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Moreover, the decision to impute income for purposes of spousal support is also within the discretion of the trial court. Nichols v. Nichols (Dec. 29, 1999), Summit App. No. 19308 (imputing income to spouse not an abuse of discretion); Petrusch v.Petrusch (Mar. 7, 1997), Montgomery App. No. 15960 (decision to impute income within court's discretion).
 {¶ 24} The trial court's complete rationale for declining to impute income to Laura is not clear. The trial court mentions her inability to work, the income part-time work would likely generate, and her disability benefits. Its decision was not an abuse of discretion. SeeBarber v. Gross, Lake App. No. 2005-L-063, 2005-Ohio-7056, at ¶ 17 *Page 10 
(citing cases for proposition that reviewing courts review judgments, not reasons). Laura suffered from rheumatoid arthritis and fibromyalgia and had not worked since 1997. She was receiving disability benefits from her former employer and social security. Laura's vocational expert opined that she was unable to return to work based on her medical conditions as well as her age, time away from the workforce, and restricted range of positions she could perform. Even Mark's expert witnesses opined that Laura's physical conditions limited her employment opportunities. In light of this evidence, and regardless of any speculative loss of disability benefits, the trial court did not abuse its discretion by declining to impute income to Laura.
 {¶ 25} We also note that Mark does not take issue with any of the other factors in the trial court's spousal support analysis. The trial court properly considered all of the applicable factors in R.C. 3105.18(C) and determined that an award of spousal support was reasonable and appropriate. Taking into account that analysis and the evidence in support of those factors, we conclude that the trial court did not abuse its discretion by awarding Laura spousal support. Mark's first assignment of error is overruled.
 {¶ 26} In conclusion, we overrule Mark's three assignments of error, and affirm the decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
 BRYANT and TYACK, JJ., concur. *Page 1